**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| VDPP LLC, | | |
| | Plaintiff, | |
| | | |
| v. | | Civil Action No. 2:23-cv-00307-JRG |
| | | |
| EPSON AMERICA, INC., | | JURY TRIAL DEMANDED |
| | | |
| | Defendant. | |

## DEFENDANT EPSON AMERICA, INC.'S MOTION TO DISMISS UNDER RULES 12(b)(3) and 12(b)(6)

Table of Contents

I.     STATEMENT OF ISSUES ............................................................................5

II.    INTRODUCTION.........................................................................................5

III.   BRIEF STATEMENT OF FACTS .............................................................6

IV.    LEGAL STANDARDS .................................................................................8

       A.    Dismissal Under Rule 12(b)(3) ..........................................................8

       B.    Dismissal Under Rule 12(b)(6) ..........................................................9

V.     ARGUMENT ..............................................................................................11

       A.    VDPP's Complaint Should be Dismissed for Improper Venue ........11

       B.    VDPP Fails to State a Claim for Indirect and Willful
             Infringement .....................................................................................13

       C.    VDPP Fails to State a Claim for Direct Infringement ...................15

VI.    CONCLUSION ..........................................................................................18

Table of Authorities

**Cases**

*Abbott Labs. v. Novopharm Ltd.*,
    104 F.3d 1305 (Fed. Cir. 1997) ............................................................................. 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 9, 17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 9, 17

*Blackburn v. City of Marshall*,
    42 F.3d 925 (5th Cir. 1995) .................................................................................. 9

*Braspetro Oil Servs., Co. v. Modec (USA), Inc.*,
    240 F.App'x 612 (5th Cir. 2007) .......................................................................... 8

*Caldwell v. Palmetto State Savs. Bank of S.C.*,
    811 F.2d 916 (5th Cir. 1987) ................................................................................ 9

*Chapterhouse, LLC v. Shopify*,
    2018 WL 6981828 (E.D. Tex. Dec. 11, 2018).................................................... 10

*Diem LLC v. BigCommerce, Inc.*,
    2017 WL 9935521 (E.D. Tex. May 11, 2017)............................................... 15, 18

*DSU Med. Corp. v. JMS Co., Ltd.*,
    471 F.3d 1293 (Fed. Cir. 2006) ......................................................................... 10

*Ferrer v. Chevron Corp.*,
    484 F.3d 776 (5th Cir. 2007) ................................................................................ 9

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010) ......................................................................... 10

*Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*,
    536 F.3d 439 (5th Cir. 2008) ................................................................................ 9

*Halo Elec., Inc. v. Pulse Elec., Inc.*,
    579 U.S. 93 (2016)...................................................................................... 11, 14

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) ......................................................................... 14

*In re Cray Inc.*,
    871 F.3d 1355 (Fed. Cir. 2017) ........................................................................... 8

*In re Volkswagen,*
    28 F.4th 1203 (Fed. Cir. 2022) ................................................................ 12

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018) ................................................................. 8

*Kimble v. Marvel Entm't, LLC,*
    *576 U.S. 446 (2015)* ........................................................................ 10, 13

*Logic Devices Inc. v. Apple, Inc.,*
    2014 WL 60056 (N.D. Cal. Jan. 7, 2014) ................................................. 14

*Mass Engineered Design, Inc. v. Ergotron, Inc.,*
    633 F. Supp. 2d 361 (E.D. Tex. 2009) ..................................................... 11

*Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.,*
    2012 U.S. Dist. LEXIS 114199 (E.D. Tex. July 27, 2012) ....................... 15

*Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*,
    170 F. Supp. 3d 928 (E.D. Tex. 2016) ................................................ 11, 14

*Seven Networks, LLC v. Google LLC,*
    315 F. Supp. 3d 933 (E.D. Tex. 2018) ....................................................... 8

*TC Heartland LLC v. Kraft Foods Group Brands LLC,*
    581 U.S. 258 (2017) .................................................................................. 8

*Uniloc USA, Inc. v. Avaya Inc.,*
    2016 WL 7042236 (E.D. Tex. May 13, 2016) .......................................... 16

*WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ............... 14

*Westech Aerosol Corp. v. 3M Co.,*
    927 F.3d 1378 (Fed. Cir. 2019) ................................................................. 8

## **Other Authorities**

28 U.S.C. § 1400(b) .......................................................................... 5, 8, 11

35 U.S.C. § 154(a)(2) ............................................................................... 13

35 U.S.C. § 271(b) ................................................................................... 10

35 U.S.C. § 271(c) ................................................................................... 10

Fed. R. Civ. P. 12(b)(3)........................................................... 1, 5, 6, 8, 12, 19

Fed. R. Civ. P. 12(b)(6).......................................................... 1, 5, 6, 9, 15, 18, 19

Pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), Defendant Epson America, Inc. ("Epson") moves to dismiss VDPP, LLC's ("Plaintiff" or "VDPP") Original Complaint for Patent Infringement for improper venue and failure to state a claim for each of direct, indirect and willful infringement. This motion to dismiss suspends the time to respond to the entire complaint.

## I.      STATEMENT OF ISSUES

Epson requests dismissal of VDPP's Complaint under Fed. R. Civ. P. 12(b)(3), because the Eastern District of Texas is not a proper venue for this lawsuit.

Epson also requests dismissal of the complaint on the basis of Fed. R. Civ. P. 12(b)(6) because VDPP has failed to state a plausible claim for each of direct, indirect and willful infringement.

## II.     INTRODUCTION

VDPP commenced this action by filing a Complaint for Patent Infringement against Epson on June 26, 2023 ("Complaint," Dkt. Number 1). In the Complaint, VDPP accuses Epson of infringement of a single expired U.S. patent, namely U.S. Patent No. 10,021,380 ("the '380 Patent"). As an initial matter, VDPP's Complaint lacks sufficient factual allegations to establish that Epson has a regular and established place of business in the Eastern District of Texas, as required under 28 U.S.C. § 1400(b). Rather, the Complaint identifies a place of business that is owned and operated by a third party, Imaging Spectrum.

With respect to the '380 Patent, VDPP's Complaint asserts direct, indirect and willful infringement. But its claims are insufficiently pled. VDPP's claims for direct infringement fail to satisfy the basic requirements of the *Iqbal/Twombly* pleading standard; its claims for indirect infringement fail to establish any plausible factual allegation that Epson had the requisite knowledge of '380 Patent, or the other elements required to plead indirect infringement; and its

claim for willful infringement lacks any factual allegations at all. The willful infringement claim only appears in the prayer for relief.

Accordingly, Epson respectfully requests the Court to dismiss VDPP's complaint under both Fed. R. Civ. P. 12(b)(3) and Fed. R. Civ. P. 12(b)(6).

## III.   BRIEF STATEMENT OF FACTS

There is no dispute that Epson is incorporated in California as alleged in the Complaint and confirmed in the attached supporting Declaration ("Dec." attached as Exhibit A). Thus, Epson does not reside in the Eastern District Texas for purposes of venue. Epson also does not have any physical places of business in the Eastern District of Texas. Dec. ¶¶ 4 and 5. In the Complaint, VDPP identifies the "Epson Certified Solution Center" in Plano, Texas as a regular and established place of business of Epson. Complaint ¶2. However, this facility is owned and operated by a third party, Imaging Spectrum, as confirmed in Exhibit C to the Complaint.[1]

The Complaint alleges infringement of the '380 Patent, which was granted on July 10, 2018. The '380 Patent expired January 22, 2022. This date is twenty years after the January 22, 2002 filing date of the '380 Patent's earliest filed U.S. priority application, Application No. 10/054,607.

The '380 Patent is titled "Faster State Transitioning for Continuous Adjustable 3Deeps Filter Spectacles Using Multi-Layered Variable Tint Materials." The '380 Patent relates to the field of motion pictures and can allow a motion picture filmed in 2D to be viewed with a visual

---

[1] While Plaintiff references Exhibit C in the complaint, Exhibit C was not actually filed with the Court.  It appears that the same Exhibit was included in a complaint filed against Epson by Ortiz & Associates Consulting, LLC (Case No. 2:23-cv-00308-JRG), which is also pending before the Court and relies on the same facility to allege proper venue.  Attached hereto as Exhibit B.

effect of three dimensions when viewed through 3Deeps Filter Spectacles. For direct infringement, the Complaint alleges the following:

> Defendant maintains, operates, and administers systems, products, and services in the field of motion pictures that infringes one or more of claims 1-30 of the '380 patent, literally or under the doctrine of equivalents. Defendant put the inventions claimed by the '380 Patent into service (i.e., used them); but for Defendant's actions, the claimed-inventions embodiments involving Defendant's products and services would never have been put into service. Defendant's acts complained of herein caused those claimed-invention embodiments as a whole to perform, and Defendant's procurement of monetary and commercial benefit from it.

Complaint ¶8. While the Complaint asserts that Epson infringes one or more of claims 1-30, the Claim Chart attached to the Complaint only references claim 6 and contains nothing more than screenshots from an Epson user manual with conclusory statements that mirror the claim language.  *See* Exhibit B to the Complaint ("Claim Chart").

The Complaint's allegations for induced and contributory infringement are two nearly identical paragraphs. Complaint ¶¶ 10 and 11. Both paragraphs allege only that Epson "has known of the '380 patent and the technology underlying it from at least the filing date of the lawsuit." Neither paragraph provides any factual support for knowledge of the '380 Patent prior to its expiration or any of the other required elements for induced and contributory infringement.

In the prayer for relief, VDPP asks the Court to declare Epson's infringement "to be willful." Complaint at page 5, ¶ e. However, the body of the Complaint contains no discussion of willful infringement and no factual allegations to support the elements of a willful infringement claim.[2]

---

[2] VDPP uses the same boilerplate language for direct and indirect infringement in numerous other complaints asserting the '380 Patent.  Those same complaints similarly lack any factual allegations or discussion to support the VDPP's claims for willful infringement.  *See, e.g.*, *VDPP LLC v. ZTE USA, Inc.*, Case No. 2:23-cv-00373 (E.D. Tex.); *VDPP LLC v. Panasonic*

## IV.    LEGAL STANDARDS

### A.    <u>Dismissal Under Rule 12(b)(3)</u>

The burden to establish venue in patent infringement cases rests with the plaintiff. *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1382 (Fed. Cir. 2019). Proper venue in this case is governed by 28 U.S.C. § 1400(b), the "sole and exclusive provision controlling venue in patent infringement actions." *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258, 266 (2017). Under § 1400(b), a patent infringement case may only be brought in the judicial district where (1) the defendant resides, or (2) where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b). Whether venue is proper under § 1400(b) is an issue unique to patent law and thus governed by Federal Circuit precedent. *In re: ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018) (citation omitted).

Under the first prong of § 1400(b), a domestic corporation "resides" only in its state of incorporation. *TC Heartland*, 581 U.S. at 266. As to the second prong, the Federal Circuit has interpreted the "regular and established place of business" inquiry to impose three general requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. If any statutory requirement is not satisfied, venue is improper under § 1400(b)." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). *See also Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 938 (E.D. Tex. 2018).

---

*Corporation of North America, Inc.*, Case No. 3-22-cv-02831 (N.D. Tex.); *VDPP LLC v. Microsoft Corporation*, Case No. 6-22-cv-00362 (W.D. Tex.).

In ruling on a Rule 12(b)(3) motion, the Court must initially accept as true all of the well pleaded allegations in the complaint and resolve any factual conflicts in the plaintiff's favor. *Braspetro Oil Servs., Co. v. Modec (USA), Inc.*, 240 F.App'x 612, 615 (5th Cir. 2007). However, the Court may consider evidence in the record beyond the facts alleged in the Complaint and its attachments, including affidavits or evidence submitted by the defendant in support of its motion, or by the plaintiff in response. *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008). If venue is improper, the Court has broad discretion to dismiss the case. *Caldwell v. Palmetto State Savs. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987).

### B.   <u>Dismissal Under Rule 12(b)(6)</u>

When addressing a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this plausibility standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While a court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff, a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 570. A court also does not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. Thus, "[t]hreadbare recitals of the

9

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 570.  The *Iqbal/Twombly* pleading standard applies to direct, indirect, and willful infringement allegations.  *See Chapterhouse, LLC v. Shopify*, No. 2:18-cv-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018) (dismissing direct infringement allegations for not meeting the Iqbal/Twombly pleading standard).

### 1.    Properly Pleading Indirect Infringement

Under 35 U.S.C. §§ 271(b) and (c), a defendant may be found to be an indirect infringer if it induces or contributes to the infringement of a third party. To plead induced infringement under 35 U.S.C. § 271(b), a complaint must include facts showing that a defendant: (1) had actual knowledge of the patent; (2) knowingly induced a third-party to infringe the patent; and (3) had specific intent to induce the patent infringement. *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006). To plead contributory infringement under 35 U.S.C. § 271(c), a complaint must allege facts plausibly showing that the accused infringer sells within, or imports into, the United States a component of a patented apparatus or one for use in practicing a patented process and: "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

Further, a patent cannot be infringed after its term has expired. *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 451 (2015) ("And when the patent expires, the patentee's prerogatives expire too, and the right to make or use the article, free from all restriction, passes to the public.") Accordingly, for a claim of indirect infringement, the plaintiff must allege facts under which the

10

defendant had the requisite knowledge and intent while a patent could be infringed, i.e., during the term of the patent.

### 2.      Properly Pleading Willful Infringement

To establish willful infringement, a plaintiff must plausibly allege the "subjective willfulness of a patent infringer, intentional or knowing." *Halo Elec., Inc. v. Pulse Elec., Inc.*, 579 U.S. 93, 105 (2016). A claim for willful patent infringement requires proof that (1) "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and (2) "this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 938 (E.D. Tex. 2016). This requires a plaintiff to allege facts plausibly showing that the accused infringer acted despite an objectively high likelihood that its actions infringed a valid patent. *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 379 (E.D. Tex. 2009).

Thus, claims for induced, contributory, and willful infringement each require the plaintiff to show that the defendant knew of a specific patent, but also further knew that its acts, or the acts of another, constituted infringement of the specific patent.

## V.      ARGUMENT

### A.      VDPP's Complaint Should be Dismissed for Improper Venue

Plaintiff has failed to satisfy either prong of §1400(b). VDPP does not and cannot allege that Epson resides in Texas for purposes of venue, given that Epson's state of incorporation is California. Dec. ¶3. Thus, the first prong of §1400(b) is not in dispute.

With respect to the second prong of §1400(b), the Complaint alleges that Epson "has a regular and established place of business located at 1101 Summit Ave, Plano, TX 75074," and that "Epson has this office location as an Epson Certified Solution Center." Complaint ¶ 2.

However, the Complaint fails to establish that the identified Epson Certified Solution Center (the "Center") is a regular and established place of business of Epson. In fact, as confirmed by Plaintiff's (missing) Exhibit C, as well as Epson's supporting Declaration, the Center is owned and operated by a third party dealer, Imaging Spectrum. Dec. ¶6. There are no Epson personnel at the Center. Dec. ¶7. All the Epson equipment there is owned by Imaging Spectrum and Imaging Spectrum decides what equipment to purchase and how much space to dedicate to showing Epson equipment, among other brands. Dec. ¶7. Epson does not own any part of the facility. Dec. ¶9. Epson is not on any facility lease nor does Epson pay any rent or hold any insurance for the facility. Dec. ¶9.

Further, VDPP has not alleged any facts to establish an agency relationship between Epson and Imaging Spectrum. *See In re Volkswagen*, 28 F.4th 1203 (Fed. Cir. 2022) (holding that independently owned and operated car dealerships are not agents of automobile manufactures when their day to day operations are not controlled by the manufactures, and thus cannot constitute regular and established places of business of the automobile manufactures for venue purposes). In fact, Imaging Spectrum is not an agent of Epson. Dec. ¶¶ 7, 8. Epson has no right to direct or control the operations of Imaging Spectrum or the operations at the Center. Dec. ¶8. Imaging Spectrum is an independent dealer that purchases equipment from Epson and then markets and sells that equipment though its own facilities and personnel. Dec. ¶¶ 6, 7. Similar to the independent car dealerships at issue in *In re Volkswagen*, Epson has no control over the sales once the equipment is purchased from Epson, and there are no "step-by-step" instructions from Epson that Imaging Spectrum must follow when selling any Epson products. Dec. ¶ 8.

Accordingly, the Complaint has failed to establish that Epson has a regular and established place of business in the Eastern District of Texas. Given the relevant facts, VDPP

cannot establish proper venue in the Eastern District of Texas, and thus the case should be dismissed under Rule 12(b)(3).

**B.**   <u>**VDPP Fails to State a Claim for Indirect and Willful Infringement**</u>

 VDPP fails to properly plead its claims of indirect infringement because the Complaint includes no plausible facts asserting that Epson knew of the '380 Patent before VDPP filed the Complaint, or that the other elements of induced infringement are present. VDPP does not allege that Epson had any pre-suit knowledge of the '380 Patent, and only pleads that Epson obtained actual knowledge of the asserted patent at the time of filing the complaint. Complaint ¶¶11, 12. However, the '380 Patent expired long before the filing of the Complaint.

The expiration date of a patent is a matter of law. *Abbott Labs. v. Novopharm Ltd.,* 104 F.3d 1305, 1307-08 (Fed. Cir. 1997). The term of a patent begins on the date on which the patent issues and ends 20 years from the date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications under section 120, 121, 365(c), or 386(c) from the date on which the earliest such application was filed. 35 U.S.C. § 154(a)(2). Thus, a patent's term ends twenty years after the filing date of the earliest filed application referenced under 35 U.S.C. § 120 and related statutes.

In this case, the '380 patent expired well prior to VDPP's filing of the instant lawsuit. Under the provisions of 35 U.S.C. § 154(a)(2), the '380 patent expired on January 22, 2022, which is 20 years after the filing date of the earliest filed priority application. The USPTO records also confirm that the '380 Patent expired, although the USPTO records indicate that it expired due to nonpayment of maintenance fees as of July 10, 2022. *See* Exhibit C. Regardless, in any case, the patent expired well before the June 26, 2023 filing date of the instant complaint. Once the patent expires, there is no longer a patent to infringe.  *Kimble*, 576 U.S. at 451.

For VDPP's indirect infringement claims to survive a motion to dismiss, the complaint must contain facts plausibly showing that Epson knew of the asserted patent before its expiration. *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.,* 681 F.3d 1323, 1339 (Fed. Cir. 2012) ("To survive Appellees' motion to dismiss, therefore, R+L's amended complaints must contain facts plausibly showing that Appellees specifically intended their customers to infringe the '078 patent and knew that the customer's acts constituted infringement.") VDPP does not plead any facts that could plausibly support a claim that Epson had knowledge of the '380 Patent before it expired.  As a result, VDPP also fails to plead any facts plausibly showing that Epson specifically intended its customers to infringe the '380 Patent and knew that its customer's acts constituted infringement.  Thus, Plaintiff's claims for indirect infringement must be dismissed. *See, e.g., Logic Devices Inc. v. Apple, Inc.,* No. C 13-02943 WHA, 2014 WL 60056, at *2 (N.D. Cal. Jan. 7, 2014) (dismissing a plaintiff's claims for willful and induced infringement because the asserted patent expired before the filing of the complaint).

Further, to the extent that VDPP's prayer for relief can be construed as an attempt to plead willful infringement, the allegation should be dismissed. A claim for willful patent infringement requires proof that (1) "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and (2) "this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 938 (E.D. Tex. 2016). VDPP fails to assert that Epson even knew of the '380 Patent while it was in force, which necessarily precludes a finding that Epson acted when they knew or should have known of an objectively high likelihood that its actions constituted infringement of a valid patent. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317,

14

1341 (Fed. Cir. 2016) (confirming that knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages) (citing *Halo*, 579 U.S. at 1932-33).

Thus, VDPP's indirect infringement and, to the extent pled, willful infringement, claims should be dismissed under Fed. R. Civ. P. 12(b)(6).

### C.    VDPP Fails to State a Claim for Direct Infringement

VDPP fails to plausibly plead a cause of action for direct infringement by Epson.  The only factual support for VDPP's claim of direct infringement is the Claim Chart attached to the complaint, which fails to satisfy the basic requirements of the *Iqbal/Twombly* pleading standard.

Under such standard, and as interpreted by this court, "Plaintiff must put Defendant on plausible notice of the claims Defendant may need to defend agains[t] by identifying a representative claim … and providing facts sufficient to create a plausible inference that each element of the claim is infringed by the accused products. [I]n the post-Form 18 world, a plaintiff must include allegations sufficient to permit [the] court to infer that the accused product infringed each element of at least one claim." *Diem LLC v. BigCommerce, Inc.*, No. 6:17-CV-186 JRG-JDL, 2017 WL 9935521, at *2 (E.D. Tex. May 11, 2017).  Further, "cases involving more nebulous, less tangible inventions such as computer software methods may require a higher degree of specificity to provide proper notice to the defendant." *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 6:11-cv-229, 2012 U.S. Dist. LEXIS 114199, at *13 (E.D. Tex. July 27, 2012).

The Claim Chart provided by VDPP for this invention is nothing more than screen shots of unrelated product features from an Epson product website and user manual, with conclusory allegations that simply mirror the claim language. No attempt is made to show how these product features are related, let alone that they work together in the specific manner required by claim 6 of the '380 Patent. Claim 6 is an apparatus claim that requires a processor that has a specific

functionality, that including the ability to expand, modify, combine and display images. As explained in more detail below, the Claim Chart fails to provide facts sufficient to create a plausible inference  that the identified Epson product includes the functionality required by the claim. Rather, VDPP has identified unrelated features of the Epson product and simply restated the claim language in conclusory allegations.  *Compare Uniloc USA, Inc. v. Avaya Inc.*, No. 6:15-CV-1168-JRG, 2016 WL 7042236, at *3 (E.D. Tex. May 13, 2016) (a claim for direct infringement was satisfactorily pled when it provided descriptive illustrations of products and the accused functionality sufficient to support a reasonable inference that defendant is liable for direct infringement of the asserted claims).

VDPP only provides general identifications of some features of Epson's projectors without identifying how such features could infringe the required functionality of the representative claim. For example, asserted claim 6 of the '380 Patent requires that two image frames are first expanded to make modified image frames, and those (already expanded) modified image frames are combined. VDPP identifies a feature in the Epson product manual labeled as "Adjusting Scaled Resolution Images (Super-resolution)" as allegedly corresponding to the claim elements that require: "expand the first image frame to generate a modified first image frame, wherein the modified first image frame is different from the first image frame" and "expand the second image frame to generate a modified second image frame, wherein the modified second image frame is different from the second image frame." *See* Claim Chart at Rows 6.3 and 6.4.  This feature is described in page 86 of Epson's Home Cinema 5050UB/5050UBe User's Guide. VDPP then attempts to map the feature "combine the modified first image frame and the modified second image frame to generate a modified combined image

frame" to a completely separate "Frame Interpolation" feature described in the User's Guide at page 86. *See* Claim Chart at Row 6.5.

VDPP's citations to these two product features lack any explanation of how they are related or how they meet the elements of the claim limitations.  VDPP provides no factual support as to how Epson's alleged "scaling" of images corresponds to the "expanding" of the first and second image frames as required by the claim. Further, in alleging that Epson's Frame Interpolation corresponds to the claimed feature "combine the modified first image frame and the modified second image frame to generate a modified combined image frame," VDPP merely alleges " Epson Projector 5050UB combines the modified (scaled) first and second image frame, and combines them - generating a modified combined image frame (which are the interpolated frames)." This is entirely conclusory in nature and VDPP provides no factual allegations as to how Epson's frame interpolation feature amounts to combining any image frames. Importantly, the claim limitation requires combining the <u>modified</u> first and second image frames (e.g., those that have been expanded), and VDPP provides no factual allegations to support that the image frames that are allegedly expanded (scaled) by the Epson Super-resolution product feature are then combined by the Epson Frame Interpolation Feature.  VDPP's conclusory allegation simply repeats the claim language without any factual content to demonstrate how Epson's frame interpolation feature meets the claim limitation by combining the scaled images from the Epson Super-resolution product feature.  Conclusory recitations of claim language, like those included for this and each of the claim limitations in the Claim Chart, do not constitute "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; see also *Twombly*, 550 U.S. at 555 (stating a claim "requires more than labels and conclusions").

VDPP makes no attempt to explain how Epson's entirely separate product features for Adjusting Scaled Resolution Images and Using Frame Interpolation processes are related,  or that they together perform the required steps to expand, modify, and combine images frames as required by the claim.  In fact, the cited Epson User's Guide never suggests combining modified (expanded) image frames. Additionally, the frame interpolation feature in the manual at page 81 is described *before* the adjusting scaled resolution images, and is never referenced or discussed in combination with the feature of Adjusting Scaled Resolution Images is introduced. Nowhere is it ever suggested that frame interpolation can occur to any image frames that have undergone adjusting scaled resolution adjusting.

VDPP's threadbare Claim Chart cherry-picks features of Epson's manual without sufficiently pleading how, or why, such features are connected as required by the asserted claim. The *Iqbal/Twombly* pleading standard requires more than conclusory statements and must provide facts sufficient to create a plausible inference that each element of the claim is infringed by the accused products. *See Diem LLC* at *2. Accordingly, the Complaint fails to state how Epson directly infringes claim 6 of the '380 Patent, and its direct infringement claim should be dismissed under Fed. R. Civ. P. 12(b)(6).

## VI.    **CONCLUSION**

Epson respectfully requests that the Court dismiss, with prejudice, Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(3) and Fed. R. Civ. P. 12(b)(6).

Date: September 1, 2023    Respectfully submitted,

        /s/ Andrew W. Stinson
        Peter T. Ewald *(pro hac vice forthcoming)*
        Joel M. Gotkin *(pro hac vice forthcoming)*
        OLIFF PLC
        11 Canal Center Plaza
        Suite 200
        Alexandria, VA 22314
        703-836-6400
        pewald@oliff.com
        jgotkin@oliff.com

        Andrew W. Stinson
        State Bar No. 24028013
        RAMEY & FLOCK, PC
        100 E. Ferguson Street, Suite 500
        Tyler, TX 75702
        903-597-3301
        andys@rameyflock.com
        **Attorneys for Defendant**

## Certificate of Service

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via CM/ECF on September 1, 2023.

        /s/ Andrew W. Stinson
        Andrew W. Stinson